## The WILLIAM H. VANDERBILT.

### BROOMAN *v.* THE WILLIAM H. VANDERBILT *et al.*

*(Circuit Court, S. D. New York.   October 15, 1888.)*

COLLISION—FAILURE TO COMPLY WITH SIGNAL.

The steam-tug Lee, coming down North river with libelant's boat in tow, while rounding to go to the Erie elevator, Jersey City, was delayed by another tow running inside of her. She whistled twice, the latter of which was heard and answered by an assenting whistle from the Vanderbilt, coming up the river. The assenting signal meant that the Vanderbilt would keep to the eastward, out of the way, and that the Lee might wait in safety. Libelant's boat was in view of the Vanderbilt, and was gradually swinging down the river, until it came into collision with the Vanderbilt. The testimony as to whether the Vanderbilt immediately stopped and backed was conflicting. *Held*, that the finding of the district court that the Vanderbilt did not stop and back, or keep out of the way, as indicated by her signal, and that she was liable for the injury, cannot be disturbed.

In Admiralty.   On appeal from district court.

Libel by Thomas Brooman against the steam-tug William H. Vanderbilt, John H. Starin, claimant, and the steam-tug John Lee, Thomas Curran and others, claimants, for damages for the collision of the William H. Vanderbilt with libelant's boat in tow by the John Lee.   In the district court Judge BROWN delivered the following opinion:

"The steam-tug Lee, coming down the North river with the libelant's boat in tow, while rounding in order to go to the Erie elevator, Jersey City, was

delayed by another tow running inside of her. While waiting a few minutes to let that tow pass to the north, the libelant's boat was run into by the Vanderbilt coming up river from below.

"I am satisfied that the Lee, in running in towards the New Jersey shore, went as near to the inside tow as was safe. No fault can be predicated of her in this respect.

"The Lee had a right to turn around in order to make her slip, and to stop for any obstacle in the way, until it had passed; but she had no right to turn so suddenly as to make the necessary swing of her tow, which was in all nearly 400 feet long, dangerous to vessels coming up the river. I am satisfied that the unexpected long swing of the tow in proximity to the Vanderbilt was one cause of the collision, though the main cause, notwithstanding the Vanderbilt's testimony, was the failure to stop and back at once after her assenting whistle. I am satisfied that there was ample time and space to avoid the tow, had she reversed immediately after her assenting whistle. There is a difference of over 600 feet in the estimates given as to the distance of the Lee from the Vanderbilt when the whistles were exchanged between them. The Vanderbilt's witnesses are more likely correct as to her own position at that time, i. e., opposite the stock-dock. A person looking from aboard the Lee would naturally suppose the Vanderbilt further south than she really was. The Lee had previously given a signal of one whistle, when the Vanderbilt was one pier further down the river, which was not answered, because not heard. The Lee then stopped her engines, and gave a second whistle, but went on again as soon as the answer of one whistle from the Vanderbilt was received. Before this exchange of whistles the pilot of the Vanderbilt supposed the Lee intended to wait and let the Vanderbilt go inside of her. When the whistles were exchanged, the courses of the two tugs were crossing. The Vanderbilt, having the Lee and her tow on her own starboard hand, was bound to keep out of the way of the Lee and her tow. The answer of one whistle was an assent by the Vanderbilt and an agreement to go to the eastward. The tow was in sight. The Vanderbilt could see its length; and if her pilot thought there was not room to maneuver in accordance with the signals, and keep out of the way of the tow, she was bound to give danger signals, and not to have misled the Lee by answering with a signal of one whistle, that the Lee should go ahead and cross the Vanderbilt's bow. It must be assumed from the assenting signal and the Lee's testimony that there was room for the Lee to go ahead safely towards the dock, under all the circumstances of the situation. One of these circumstances was the inside tow, which was a partial obstruction, and required the Lee to wait, when she had got near her, till the tow had got out of the way, and during this time the tow was necessarily gradually swinging down river.

"It is immaterial just what was the precise position or heading of the Lee if she went as far in towards the tow as was safe, which I consider proved. It was not the duty of the Lee to go on up river, and away from her destination, in order to keep out of the way of the Vanderbilt, unless a special emergency arose requiring it, of which the Lee had knowledge in time to avert collision by that means. In general, the Lee had the right to wait, holding her place in the river, as she did, till she could go into her slip, and, having given the Vanderbilt timely notice to keep away to the eastward, or avoid her by stopping, and having received an assent thereto, she had a right to expect the Vanderbilt to do one or the other, and thus avoid her tow. The Vanderbilt's signal I must consider confirmatory proof of the Lee's testimony that she had time and space for keeping away; and that the only reason she did not do so was because she either neglected to observe the inside tow and did not allow for the Lee's necessary stop, or else miscalculated the length of the tow and its swing, and did not stop and back as soon as she might and ought to have

done. I see no legal fault in the Lee, and think that the Vanderbilt must be held alone to blame.

"Had the Lee, in the situation as it actually existed during a minute before the collision, under the prior assenting signals, had clear reason to suppose that the Vanderbilt was not either stopping or backing in time, or not going to the eastward in time to avoid colliding with the end of her tow, it would doubtless have been a fault in the Lee that she did not hook up and go ahead so as to aid in taking her out of the impending danger of collision. But the Lee was 400 feet away from the end of her tow, and it had already swung nearly straight down river. It was not possible, I think, for the pilot of the Lee, in that situation, to have perceived that there was any necessity for him to hook up strong, in time to have started such a tow so as to be of any service. Had there appeared to be danger, or need of the Lee's aid, it seems fair to assume, after the Vanderbilt's assenting signals had been given, that some further notice of danger or signal to the Lee should have been given by the Vanderbilt. No such notice or further signals were given by the Vanderbilt, and I cannot find, therefore, that the pilot of the Lee was chargeable with any timely notice that the end of his tow was in danger through any inability or neglect of the Vanderbilt so as to require him to deviate from the ordinary course in waiting until the inside tow had moved out of the way. The real cause of the collision, I am satisfied, was partly miscalculation by the Vanderbilt, but chiefly her tardiness in reversing after her assenting signal.

"The libelant is entitled to judgment against the Vanderbilt, with costs. As against the Lee, the libel should be dismissed, with costs."

Whereupon respondents appeal.

*W. W. Goodrich*, for Starin.

*Peter Alexander*, for Curran.

*Josiah A. Hyland*, for libelant.

LACOMBE, J. I see no reason for reversing the decree of the court below. There is a conflict of testimony as to whether the Vanderbilt did or did not stop and back at once after giving her assenting whistle. The learned district judge, who heard the witnesses, credited those who testified that she did not so stop and back, and disbelieved those who swore that she did. There is nothing in the case which makes that testimony so incredible that this court, which has not heard the witnesses, and is therefore without facilities for estimating the value of the personal equation, with which all human evidence is to be tested, should disturb his finding on that point. He has also found that the Lee stopped only to permit the inside tow to pass, going as near to such tow as was necessary and proper. The evidence abundantly sustains that finding. The Lee's tow, though a long one, was not improperly so, in view of the presence of ice in the river. She had a right to stand to for her slip; and when the Vanderbilt, whose pilot could see both the length of the Lee's tow and the presence of the inside tow, avoidance of which would necessarily delay the Lee, gave its assenting whistle, the Lee was justified in carrying out the maneuver which it had offered to make, and which would have been successfully accomplished had the Vanderbilt stopped and backed at once.